Thank you. Gwen Freeman for Appellant Forrand. May it please the Court, I'd like to address first the issue of the common method of proof, which I think has now been informed by this Court's decision in Dukes v. Wal-Mart, which the lower court did not have the opportunity to consider. The judicial recognition of the availability of statistical samples, random selection and surveys, and expert testimony to prove employment-type claims I think is becoming now firmly entrenched. There is in corporations such as FedEx and certainly Wal-Mart, these large corporations, a growing recognition that they keep an enormous amount of information electronically. And the fact that we are dealing with 100 different job classifications, for example, or various locations does not defeat the common method of proof because when the data is harvested electronically, you can sort by job category or you can sort by date or you can sort by late shift, early shift or by location. You can compare and contrast and the information is there for an expert witness to testify and if the finder of fact finds that evidence reliable to then make a determination based on reliable evidence. Do you believe that the California Supreme Court, if it decides Brinker one way or the other, will have any impact on this case? It will have an impact on one third of the claims, that is the third of the claims that deal with the deprivation of breaks as opposed to the unpaid breaks that the employees worked through but didn't get paid for. So that is a distinction. So the district court did not stay the matter pending Brinker, is that correct? That is correct. Or did you move separately for the court to stay? We did not move separately but we did ask the court to stay and I have noted a number of cases where more recently courts are staying. Yes, I understand that but it was an alternative request at the end of your motion. Do we know, is there anything, any dispute amongst the parties as to whether the district court was aware of Brinker and the possibility of staying? Oh, I'm certain the court was aware. Because? Well, because this particular judge has been dealing with the, it was the same judge that decided Brown that decided. Okay, so Judge Fisher, that Judge Fisher was definitely aware. So she doesn't talk about stay, she doesn't mention the request and I just want to be sure the district court had the opportunity to at least be aware of it. I understand, Your Honor, and that is my understanding that in fact the specter of Brinker and Brinkley were common knowledge. Let me put it that way. And certainly with this particular judge who is so well versed, having come out with a number of the decisions that people cite. Okay, so is it your suggestion to this panel that we should stay the matter pending Brinker? For that Brink claim, yes. I do think that's the only fair thing because to me, here's.  Correct. You think the rest of the case should proceed if we disagree with the district court on the other claims? The begin time, end time claim I think can proceed. It's certainly the simplest factual claim. All it requires is at first the gathering of the electronic information, the comparing of the punch in, punch out times, bless you, with the amount of time paid for that day, something that FedEx is. I'm thinking of case management. Are you suggesting that the case could go back, proceed on two tracks, one stayed pending Brinker and the other that on the wage and hour break claims? Correct. And then discovering everything else? There wouldn't be unnecessary activity that would have to then be duplicated or at least? No, because the electronic data is what it is. If it's produced, our experts, our respective experts can begin to analyze it, can begin to create their programs that they need to do the analysis. The question of the legal questions, they are common and they will be decided one way or the other. But, yes, I do think that would be the most efficient way of proceeding. And I would like to reserve the rest of my time. Okay. Good morning, Your Honors. May I please support Gina Littrell and my co-counsel Christopher Yost on behalf of Appleease Federal Express. To address Your Honor's question first regarding whether Judge Fischer at the district court was aware that the California State Supreme Court had granted review of Brinker. The answer is yes and can be found in the record in Volume 2. The oral argument transcript in February of 2009 includes a discussion with Judge Fischer and counsel for both sides regarding the Brinker stay issue. And the appellants dealt with it pretty significantly in their reply brief on the motion for class certification. And so you think the district court erred by not staying? Absolutely not, Your Honor. The district court was aware that Brinker was pending. The district court was also aware that she is required to determine for herself what the state supreme court ruling would likely be when there has been no answer. You know, that's a position that we find ourselves if we're in a diversity case that we have to predict. But it's not often that we're cast in a position of having to determine something while the issue is pending before the highest court of that state. Why isn't it the prudent thing to do for the district court to stay? And then the second question is, as a matter of our reviewing the district court's decision, should we decide to stay this pending Brinker just as a matter of our review? So independent of any obligation the district court had. Your Honor, first as a procedural point, until oral argument in answer to the judge's question this morning, the appellants had not asked this court for a stay. The appellants had presented an issue in their brief as to whether the district court abused its discretion in deciding the applicable law without waiting for the California supreme court. We're not foreclosed as a matter of judicial prudence. Certainly not, Your Honor. Certainly not, Your Honor. So addressing the substance of Judge Bobby's question, if a decision is imminent, is a factor to be considered. And at this point, the Brinker issue has been fully briefed before the California supreme court for over a year. And oral argument has yet to be set. So a decision does not appear to be imminent. And that is a factor to be considered. One of the probably the most important landis factor is whether a decision will simplify the issues in the case. And in the oral argument on the class certification motion, the counsel for the appellants said that, and I'm quoting from the record at page 35, Brinker isn't going to be dispositive. And indicated that the stay should apply to the entire case. So on the one hand, counsel for appellants argued that Brinker would not be dispositive and therefore would not simplify the issues. And secondly, asked that the entire case be stayed, which would prejudice both sides. There are always evolutions of the law. The law changes. And one party or the other, if the matter were stayed, would be impacted. But in this case, appellants agree that Brinker is not dispositive. Brinker will determine what the California statute means when it says an employer has an obligation to provide meal and rest breaks. And what the Siqueiros court said, which is the only active court of appeals opinion, what the Siqueiros court said is that the employer has an affirmative obligation to ensure that the employees are relieved of their duties. Which is similar to what the statute requires, that the employer must provide the meal break. So this court does not need to wait on an opinion from the California Supreme Court in the Brinker matter. Because we are here for a very limited purpose. And that is, as this court just last week noted in its opinion in the Wang v. Chinese Daily News case, which cited this court's en banc opinion in the Dukes v. Walmart case, reversal of the district court's class cert decision is only warranted upon a strong showing  And what the court, the district court noted in the beginning of her rigorous analysis, is that it is the burden of the plaintiffs petitioning for class cert to come forward with a common method of proof to establish each of the required elements of the class claims. And in this case, the district court properly exercised its jurisdiction, its discretion rather, in determining that the plaintiffs failed to articulate a common method of proof on each of its two claims. With Wang, Dukes was one where the district court had certified the class. In the Dukes case, the district court had certified the class. That's correct. Yes. I was on the en banc, so I do remember that one. You were. And among the majority, I believe, Your Honor. Maybe to our regret. I don't know. We'll find out. But the Wang case, was that similarly where the district court had certified? Yes. In part. Was there any distinction on the amount of deference we give to district court when they had certified or not certified? There should not be any distinction in the deference given to the district court. The question is whether the district court abused its discretion. And for this court to find that the district court abused its discretion, this court would have to find that the district court failed to consider a required factor, considered the wrong factor, or made a clear error of judgment. Okay. So there are two claims here that are before us. One is on the breaks and meals. That's the brinker issue, correct? Yes, Your Honor. So if we concluded that it was an abuse of discretion not to stay and try to proceed without letting the California Supreme Court rule, would you say that, agree with the counsel for plaintiffs, that that does not dispose of whether or not the off-clock, on-clock claim should proceed? I would agree, Your Honor. So then the question would be whether the district court applied the right rule of law. And I think the argument is, is it not that she did not apply the standard that was set forth in Rutte versus Lojack, about the proper standard is whether the under the control of the employer? That's correct, Your Honor. That is the argument. However, what the appellee does not dispute, that the proper determination on the off-the-clock or hours worked without pay claim is control. The legal question is not in dispute. But that's not what the district court said, was it? I didn't see on pages, I'm looking at pages 6 and 7 of the district court, where she discusses the pay for all hours worked. She hasn't really discussed the question of control. She discussed whether they had actually worked. And actually worked is very different from controlling the employee. It doesn't appear that the court has really addressed the California standard there. Your Honor, the court, the district court did not directly address in her order on class certification the controlling question of law. She didn't have to, however. What the appellants were required to do is to provide a common method of proof. And this court can affirm the class cert denial on any grounds. Yeah, but the, yeah, but that's a little bit circular, though, because what common method of proof we use may depend on what it is that we have to prove. And she wanted proof of actual working, and that would require individualized proof. If, for example, we were to say, well, it's merely a matter of control, and once you punch in, FedEx has the right to control your time. Now, that doesn't mean you actually have to be working, but they have the right to control your time, and therefore you need to be paid for that. That would be a ruling of law. And it looks like FedEx may have very complete time records, and we could figure out what people are owed. Your Honor, that would be a ruling of law if there were some common method to prove control. And the appellant simply assumes, presumes, that clocking in on a manual time clock equals control. And in the DLSE's manual that we attach to our brief, page 51, I believe, of the attachment to our brief, the DLSE anticipates that that is not the case, that 47.2.2 of the Enforcement Policies and Interpretation Manual directly addresses differences between clock records and actual hours worked and says that time clocks are not required, but in those cases where they're used, employees who voluntarily come in before regular starting time or remain after closing time do not have to be paid for such period, provided they do not engage in any work. So it is not a simple legal question as to whether an employee punches in on a time clock and is therefore under the control of the employer. There would be individual inquiries required to determine the question of control. That's interesting. The point from the manual that you've raised is quite an interesting one. It might have been good if the district court had discussed it. I understand, Your Honor. And the district court was succinct in her explanation of the reasons for denial of class certification. But as this Court noted in the Hannon case, the district court does not have to give a full recitation. And in that case, the court found that the district court was, in fact, conclusory and gave no explanation, but was able to find support in the record for a basis to affirm the denial of class certification. And that case was cited in our brief. It's the Hannon v. Data Products case, this Court's opinion, 976 S. 2nd 497 at page 508. The problem with that approach, I don't have the facts of that case in mind, but when we start looking in the record to find whether the district court has addressed the issue and find ourselves trying to address fact questions, which may be implicit in the manual argument that you're making, then we wind up being put in the position of being fact finders. And that's something the district courts don't like us to do. They think that's their problem. So it's a gray area there as to how much we can search the record to find whether the district court applied the right standard. That is correct, Your Honor. And it does have to be the support for the denial of class certification from the record does need to be clear. And Apelli is not asking this Court to make findings of fact, merely to examine the record and see that there are individual questions of fact that would have to be answered in order to adjudicate the claims. And therefore, the class procedure is not the superior method, which is the conclusion that Judge Fischer reached in her opinion denying class certification and should be affirmed if not on the basis that she articulated, then on the basis in the record. In the record at page 728, Sean Healy testified that not all class members use time cards. Counsel for Appellant noted that there are over 60 jobs at issue in this proposed class. The job descriptions are available in the excerpts of the record. They are at pages 410 through 524. And those jobs are quite varied. They involve aircraft mechanics and vehicle mechanics, administrative positions, operations positions, in divisions as different as ground operations, air operations, legal and finance, not all of whom even use time cards, because the policy according to Mr. Healy's deposition was to allow the manager of each division to determine whether time cards would be used. Now, there are jobs at issue in the class that it is undisputed used time cards. But it is the plaintiff's burden to show that there is a common method of proof for all of the class to establish each of the claims, and they have failed to do that. There are no subclasses? The only subclass they proposed, Your Honor, was for aircraft mechanics. And there are still no common methods of proof. They suggest that the Meteor timekeeping system provides a common method of proof. That system was unique to aircraft mechanics. It automatically had the schedule's input and scheduled a meal break at the midpoint. The FedEx policy, which applied specifically and exclusively to aircraft mechanics, was to pay the meal break if it wasn't taken within one hour of the midpoint on either side. That was a FedEx policy for aircraft mechanics that has nothing to do with California's meal and rest break requirements. And what Mr. Ferrand, who is the lead plaintiff and the aircraft mechanic subclass representative, was upset and complaining about was that he had heard that mechanics, aircraft mechanics in Memphis, were paid for their meal breaks every day, and aircraft mechanics in Los Angeles were only paid if their meal breaks were not taken within one hour on either side of the midpoint. Your Honor, I do see that my time has expired. I would like to finish this one point on Mr. Ferrand, if I may. You may. Thank you, Your Honor. It is important to note that Mr. Ferrand testified that 80% of the time he got a meal break, although not at the midpoint necessarily. That is in the record at page 240. And so the Meteor timekeeping system does not provide common proof, even as to the subclass of aircraft mechanics. Thank you. Thank you for recognizing that the clock counts up. Thank you, Your Honor. I appreciate it. You get a gold star. With respect to the issue of whether Brinker would be dispositive, it is our position that even if the California Supreme Court does come down on the side that the standard is to provide, not to insure, we still have a case. It would be then harder to prove. That is true. But I think there's been a real confusion in the literature and in this case and just generally by what provide means. Because some courts have recognized, and I would strongly urge, if you give an employee too much work and they cannot take their break because they have to finish their work, and they say, well, I decided to work through my break to finish my work, that's not voluntary. That is not providing a break. So it is our strong contention that FedEx has exactly this corporate policy and exactly this corporate structure where it closely analyzes every single action and task of every single employee and cuts it to the very finest second, where in real life, of course, things don't run smoothly. And that corporate philosophy does, in fact, prevent breaks, even if the more significant standard was, or the more limiting standard, was ultimately found to be the standard. However, having said that, it is also true that the discovery and the briefing and everything we do in the case on that claim would be very, very different depending on the standard. I would also note that in a case, recent case, Miner v. FedEx Office and Print Services, Inc., which came down August 6, 2010, United States District Court for the Northern District of California, FedEx affiliate itself asked for the stay in light of Brinker. So, I mean, I don't really think that there's a particular, you know, if you take out the adversarial part of it, I think quite clearly it does make sense to stay that particular claim until we know what it is we're actually litigating. With respect to the comment that there are many different job categories and that they are set forth in the record and all that is true, again, with respect to the begin shift, end shift time, that is simply irrelevant. The time records that are kept, whether they are, and there are various kinds, there's media and there's famous and there are, there actually is another paper time record, but the records do show when they clocked in. And, again, we're not dealing with off-the-clock time. We're dealing with on-the-clock time. To the extent that FedEx now says that the employees were free to leave after that, it is undisputed, and FedEx has not only not disputed it, they've insisted that the whole point of the clocking in was to ensure that their employees were present and ready to go. That is in the record. That is undisputed, and that makes a mockery of the argument that they were free to leave and were not under the control. If the manual says, though, that you're not going to get paid, this is just an integrity check. We just want to make sure that you're here. It's like taking attendance. So if you want to get here five minutes early, that's fine, but you don't really have to start until 9, just make sure that you're here. Correct. It's like signing a poll on your way into class. We don't care whether you get to class a minute early or two minutes early or five minutes early. Then why wouldn't that be an answer to the whole question of whether they're there or working and under control? Because FedEx did, in fact, really want them there 20 minutes early and 10 minutes early because they were, in fact, working. But we don't have to prove that. The proof is in the fact that FedEx changed its policies in 2006, and they always knew. That's the change to the five-minute early rule. Exactly. And five minutes, you know, to me that's reasonable. Okay? You get there five minutes early or four minutes or three minutes, that's reasonable. But the FedEx policy was to permit to suffer in the nomenclature of wage and hour, to suffer their employees to get there early, knowing exactly when they all got there, and very happy to have them there because they could get them to do the little extra tasks. Can you just, you know, can you open up this a little bit earlier? Can you get your truck ready just a little bit earlier? It helps them manage their workforce. And, again, this is a company that controls its employees to an extremely precise degree. And every minute counts. That's why they have such a competitive edge and why they are, in fact, such a great company. And I do believe they are a great company. But that's why, because they pay attention to these things, and they do have it all documented, and it matters to them. But it's, in fact, stealing from their employees. It's getting their profitability on the backs of their employees. I just want to make sure I understand the area. So after 2006 when FedEx changed the policy so that you could only clock in five minutes early, so are you not asking for time to be recompensed for time that you came in at 855 when you didn't have to be there until 9? What we would like to do is to get the records and to see what the records show. In the Foster versus FedEx, we ultimately made the case that the payment was for, I mean, we figured it out to the minute for each employee and paid them exactly what they were due. Your lawsuit does cover the pre-2006 period, though, when they may have been clocking in quite a bit earlier. Exactly. And, again, you know, you have the ability to sort that. You can say this is what happened, you know, pre-June of 2006 and what happened after. It wasn't actually perfect after June of 2006, as it turns out. But they at least made the effort to show, and they show by making the effort, that they, in fact, have the ability to do it. They can manage their employees if they want to. Would an inquiry about the pre-2006 policies require a facility-by-facility inquiry? No. The records are all kept electronically. Well, but would it require a facility-by-facility to sort of figure out whether people were actually working or whether anybody was actually required to do anything if they clocked in, let's say, 20 minutes early? I don't think so. Clocking in and then walking across the street to Starbucks. Right. I do not believe that it does because I do believe that they were under the control. But let me just say that if, in fact, the court disagrees, the ability to do a facility-by-facility survey is just not that difficult. It is a common method of proof. We can negotiate, as we do in many cases, an employee survey. It gets sent to all the employees. They fill it out. Some of them don't fill it out. Some of them do. If you have to do a facility-by-facility survey, then why would you require, let's say, an individual class for each facility as opposed to taking a nationwide class or a statewide class? A statewide class. Yeah, no, I would say that the class would be statewide. I don't think it matters what facility they were in. I mean, I don't see why that's. Right. If you have to do a facility-by-facility, and you might have a different result depending on one FedEx facility in California versus another facility in California, then why would a class action be useful in that situation? Because without the class action, these employees are not going to get reimbursed at all. I'm not sure. That's a very practical response. I think it's a very honest response. I'm not sure that it's a legally sufficient response as to why we should have a class action. Well, because if the common method of proof is to send out a survey to each employee, and each employee then says, you know, this is what happened in my facility or, you know, however we designed the survey, and I'm sure that would be subject to great negotiation, the difference in the specific facility doesn't matter unless, you know, if you could show that there's one facility that has a perfect record, that's just not going to happen. I mean, that's just not going to happen. That's just a question of damages and individual damages. Might we have differences also across job classifications, so job descriptions? There might be. There might be. But it doesn't, again, it's not a relevant distinction because that's only a question of the individual damages suffered by that particular person in that particular job classification. There may be a person who suffered greatly and is entitled to very much more than another person, even within the same job classification. But I think the law is very clear that the issue of damages does not defeat class certification, especially when it's so easy to figure it out. Any other questions? No, thank you. Thank you very much. Counsel, thank you both for very good arguments. We'll take our short break now. I don't know whether we'll be paid or not, but we're going to take it.
judges: Hall, Fisher, Bybee